ROBERT A. BRUNETTE
ATTORNEY AT LAW
431 NO. BRAND BLVD., SUITE 300
GLENDALE, CA 91203

OF COUNSEL
HASSEL "BUD" HILL, JR.
FREDERIC P. SMITH

(818) 502-1031
FAX (818) 502-9078
(818) 790-0958
FAX (818) 790-1032
E-MAIL: brunetlaw@aol.com

**via Facsimile**
(202) 512-9749
**& Federal Express**
(202) 512-8181

June 10, 2006

Mr. Paul Jordan, Esq.
Senior Attorney
**U.S. GOVERNMENT ACCOUNTABILITY OFFICE**
441 "G" Street, N.W.
Washington, D.C. 20548

Attention: Procurement Law Control Group

Subject: Comments of Intervenor, Regent Mfg., Inc., to East/West Protest and WR-ALC Agency Report.

Reference: Protest No. B-297391.2 of East/West Industries, Inc. to U.S. Air Force Warner Robins ALC, GA ("WR-ALC") Solicitation No. FA8518-04-R-70801, and WR-ALC Contract No. FA8518-05-D-0003, dated 26 September 2005 (1500 Lb Multiple Aircraft Canopy Crane).

Dear Mr. Jordan:

Enclosed for filing with the GAO is the original and one copy of Regent's Comments to the subject Protest and Agency Report served on me on June 2, 2006. Also, enclosed is one "redacted" copy of the same.

Respectfully submitted,

Robert A. Brunette

**Regent Mfg., Inc.**

By: Robert A. Brunette, Esq.
Outside Counsel for Intervenor



**PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER.**

cc: via Fax & U.S. Mail to:

Mr. Philip M. Dearborn III, Esq. &
Mr. Sandeep S. Kathuria, Esq.
PILIERO, MAZZA & PARAGAMENT, PLLC
888-17TH Street, N.W., Suite 1100
Washington, D.C. 20006
Phone: (202) 857-1000
Facsimile: (202) 857-0200
E-mail: pdearborn@pmplawfirm.com

Mr. Jeffrey Branstetter, USAF
AFLOA/JACN
1501 Wilson Boulevard, Room 606
Arlington, VA 22209-2403
Phone: (703) 696-9319 (direct line)
Facsimile: (703) 696-9084
E-mail: Jeffrey.branstetter@pentagon.af.mil



PROTECTED MATERIAL TO BE DISCLOSED
ONLY IN ACCORDANCE WITH GOVERNMENT
ACCOUNTABILITY OFFICE PROTECTIVE ORDER.

# BEFORE THE [redacted] GOVERNMENT ACCOUNTABILITY OFFICE

| | | |
|---|---|---|
| Protest of East/West Industries, Inc. | ) | |
| WR-ALC Contract FA8518-05-D-0003 | ) | B-297391, B-297391.2 |
| (1500 Lb Multi Aircraft Canopy Crane) | ) | |

# COMMENTS ON THE PROTEST AND AGENCY REPORT

Intervenor
Regent Mfg. Inc.

By: Robert A. Brunette, Esq.
Counsel
Dated: June 10, 2006.



**PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER.**

# TABLE OF CONTENTS

| Section | | Page |
|---|---|---|
| 1. | Introduction . . . . . . . . . . . . . . . . . . . . | 1 |
| 2. | East/West Merely Disagrees With Both WR/ALC Team Evaluations, And Fabricated Regent Safety, Past Performance And Risk Problems To Support Its Argument . . | 2 |
| | A. Both WR/ALC Teams Reasonably And Independently Evaluated East/West's And Regent's Overall Past Performance/Risk As "Very Good/Significant Confidence." . . . . . . . . . . . . . . . . . | 3 |
| 3. | East/West's Mis-statements Of Fact About Regent's Technical Acceptability And Past Performance . . . . . . . | 4 |
| | A. Regent's Minor 1998 Welding Corrections Are Not A Safety Welding Problem . . . . . . . . . . . . | 4 |
| | B. Regent's So-Called "Paper Crane" Design . . . . . | 6 |
| | C. Regent's Positive Trend In Meeting Delivery Schedules | 7 |
| 4. | Intervenor Concurs With The Agency Report . . . . . . . . | 9 |



PROTECTED MATERIAL TO BE DISCLOSED
ONLY IN ACCORDANCE WITH GOVERNMENT
ACCOUNTABILITY OFFICE PROTECTIVE ORDER

ROBERT A. BRUNETTE
ATTORNEY AT LAW
431 NO. BRAND BLVD., SUITE 300
GLENDALE, CA 91203

OF COUNSEL
HASSEL "BUD" HILL, JR.
FREDERIC P. SMITH

(818) 502-1031
FAX (818) 502-9078
(818) 790-0958
FAX (818) 790-1032
E-MAIL: brunettlaw@aol.com

**via Facsimile**
(202) 512-9749
**& Federal Express**
(202) 512-8181

June 10, 2006

Mr. Paul Jordan, Esq.
Senior Attorney
**U.S. GOVERNMENT ACCOUNTABILITY OFFICE**
441 "G" Street, N.W.
Washington, D.C. 20548

Attention: Procurement Law Control Group

Subject: Comments of Intervenor, Regent Mfg., Inc., to East/West Protest and WR-ALC Agency Report (A.R.).

Reference: Protest No. B-297391.2 of East/West Industries, Inc. to U.S. Air Force Warner Robins ALC, GA ("WR-ALC") Solicitation No. FA8518-04-R-70801, and WR-ALC Contract No. FA8518-05-D-0003, dated 26 September 2005 (1500 Lb Multiple Aircraft Canopy Crane).

Dear Mr. Jordan:

## 1. Introduction

East/West's instant protest is a tired rehash of its prior 2005 protest, and is based upon identical misinformation about the past performance of Regent Mfg., Inc. ("Regent") which borders on defamation. Regent is vilified purportedly for unreported "defects of Regent's cranes ... known throughout the industry and the Air Force Safety Center." But, East/West's submitted AFSC mishaps spreadsheet doesn't show whose cranes were involved — and, there are a multitude of crane manufacturers, including East/West itself. And, operator abuse and misuse is a primary cause of reported crane mishaps.

Further, East/West's proposal didn't inform WR-ALC that its Master Crane — which it says is "virtually the same" crane as offered in its current proposal



PROTECTED MATERIAL TO BE DISCLOSED
ONLY IN ACCORDANCE WITH GOVERNMENT
ACCOUNTABILITY OFFICE PROTECTIVE ORDER.

(A.R. TAB 3, Supp. Protest, Exhibit "D", p. 2) — was identified in 2003 by USAF General Wetekam, as a "safety hazard" and not deployable for overseas use in hardened aircraft shelters (TAB VEE), particularly in Europe.

East/West simply disagrees with the reasonable judgment of the WR-ALC evaluators. It had two bites at the apple — two separate, independent evaluation teams assessed the full record. Each assessed both bidders' evaluated rating as equal (i.e., "very good/significant confidence" for past performance, and "low risk" for proposal risk). East/West's complaint that the second Air Force team re-evaluation lowered the rating on their NGB contract is irrelevant. Even with the higher 2005 evaluation of "Very Reliant", East/West's overall evaluation for past performance was still equal to Regent's. And, the second team also lowered Regent's USCG contract rating. So, it treated each bidder equally.

Lastly, each bidder was given an opportunity to clarify its March 10, 2006 "Present/Past Performance Information" and related "Evaluation Notice per FAR 15.306(a), Clarification," concerning the relevancy of its four offered contracts. East/West readily admits its Attenuating Troop Seat System contract No. N00421-99-1172 was "not a crane", yet, it still argues its rating of "not relevant" (by both evaluation teams) should be improved. And, it makes "untimely" protestations that the Air Force's ten year limit on performance-related contracts was unfair; but, that kind of solicitation provision complaint must be brought before proposals are submitted (4 CFR 21.2(a)(1)).

2. East/West Merely Disagrees With Both WR/ALC Team Evaluations, And Fabricated Regent Safety, Past Performance And Risk Problems To Support Its Argument.

"[D]etermining the relative merits of an offeror's past performance is primarily a matter within the contracting agency's discretion. [cite omitted] An agency may base its evaluation of past performance upon its reasonable perception of inadequate prior performance, regardless of whether the contractor disputes the agency's interpretation of the facts. [cite omitted] Further, where an award is based on the best value to the government, a price/technical trade-off may be made in selecting the awardee, subject only to the test of rationality and consistency with evaluation factors. [cite omitted] A protestor's mere disagreement with the agency's judgment is not sufficient to establish that the agency acted unreasonably. (emphasis added) *Hanley Industries, Inc.*, B-295318 (Feb. 2, 2005) 2005 CPD ¶ 20, at p. 4; and *CAE USA, Inc.*, B-293002, B-293002.2 (Jan. 12, 2004) 2004 CPD ¶ 25, at pp. 6, 16-17.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER.

### A. Both WR-ALC Teams Reasonably And Independently Evaluated East/West's And Regent's Overall Past Performance/Risk As "Very Good/Significant Confidence."

Protestor merely disagrees with the agency's re-evaluation of past performance contracts relevance ratings saying —

> "[E]xcept for the 'Very Relevant' rating [on GS-07F-0246L/Master Crane], the Air Force relevance ratings were unreasonable." (A.R. TAB 3, Supp. Protest, p. 13)
>
> "[T]he Agency's ratings of East/West's two other contracts as semi-relevant [P.O. 117409] and relevant [W9133N-04-F0-0017] are also unreasonable." (A.R. TAB 3, Supp,. Protest, p. 15).
>
> "We feel that the rating on ... contract [N00421-99-R-1172] should be changed to semi-relevant" (A.R. TAB 3, Supp. Protest, p. 16).

East/West mostly complains that the second re-evaluation team should have kept the initial team's "Very Relevant" rating on its National Guard Bureau (NGB) contract. But, that's irrelevant since the initial evaluation team's overall rating — even with a higher NGB contract rating — still gave both Regent and East/West an equal Confidence Rating of "Very Good/Significance Confidence". (A.R. TAB 3, Supp. Protest, Exhibit "C", p. 5). And, East/West has no problem with the re-evaluation team's similarly downgrading Regent's USCG crane contract DTCG38-98-C-J007 — from "Relevant" to "Semi-Relevant". (A.R. TAB 3, Supp. Protest, Exhibit "C", p. 3; and A.R. TAB 16, Sect. 2.3.1, p. 16).

So, all East/West is doing in the first sixteen pages of it's Supplemental Protest is to parrot its initial April 28, 2006 Protest disagreement with the re-evaluation team's reasonable judgment of East/West's past performance on its four exemplar contracts — which is left to the agency's discretion under procurement cases cited above.

East/West next attacks Regent's past performance and risk ratings with blatant mis-statements and fabrications of fact, while ignoring its own undisclosed safety issues with its offered Master Crane.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER

3. **East/West's Mis-statements Of Fact About Regent's Technical Acceptability And Past Performance.**

A. **Regent's Minor 1998 Welding Corrections Are Not A Safety Problem.**

East/West first asserts that Regent had "welding problems in past contracts" and then points out that Regent has "experienced serious and repeated safety problems with its cranes causing substantial personnel injuries and costly property damage" (A.R. TAB 3, Supp. Protest, p. 17) — thereby charging Regent with "latent defects related to past contracts … which were known throughout the industry and the Air Force Safety Center" [citing its Exhibit "F" spreadsheet] … and "which East/West suspects that Regent may not have disclosed the defects to the Air Force in response to the Solicitation." (A.R. TAB 3, Supp. Protest, p. 22) It blusters that the "welding problems were so severe that its crane was taken out of service for safety issues," and charges that "upon information and belief, Regent's welding problems led to serious damage to an F-16 aircraft." (A.R. TAB 3, Supp. Protest, p. 22) It concludes that had the Air Force known, "it is unlikely that Regent would have been found to be technically acceptable." (A.R. TAB 3, Supp. Protest, p. 22).

The true facts are that Regent had a minor weld discrepancy in 1998, in a few of the 360 Model 9319-011 portable floor cranes delivered to the Air Force since 1996 — which were quickly remedied, as follows:

- Regent delivered over 360 Model 9319-011 (1500 lb. Portable Floor Cranes) to the USAF since 1996.
- There were no "caster weld"problems on the wheels of these cranes (as mis-asserted by East/West).
- In Jan. 1998 there was one towbar-mount "tack weld" problem on one 1500 lb Crane at RAF Lakenheath, UK (which was easily repaired).
- In Feb. 1998 at Holmstead AFB, FL one 1500 lb Crane (S/N 0060) had a reported weld failure; and WR-ALC issued a one-time visual inspection to all its USAF Crane users. But, Regent's prompt on-scene inspection and report (to WR-ALC) showed that operator misuse and abuse caused the problem; and the Air Force agreed. (see Regent's Summary of Weld Corrections, attached as **EXHIBIT "1"**).
- In March 1998 Hill AFB, UT reported that three of these 1500 lb. Cranes required weld repairs; and Regent quickly issued its two-page visual inspection procedure by month's end.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER.

- All 4 reported (minor)weld discrepancies, out of 360 total Cranes, only equate to 1% of all deliveries.
- All 4 were only minor manufacturing defects that were quickly discovered. And all 4 were repaired within ninety days from the first reported problem on Jan. 28, 1998.
- WR-ALC never issued a Quality Deficiency Report (QDR) to Regent because it was such a minor short-term incident.
- The problem was quickly corrected, and hasn't reoccurred in over six years; which actually enhances this Regent high-quality program, and its reputation in the industry.
- The Air Force has never informed Regent of any F-16 aircraft damage purportedly caused by a Regent crane; and it certainly would do so if that had ever occurred (given the "minor"weld problem reports in 1998, as mentioned above).
- The Agency Report (A.R.) identified the F-16 crane failure as "the operators did not follow their work cards and attach a stay cable, which supports the boom" (i.e., operator abuse and misuse) (A.R. TAB 19).
- Regent's semi-relevant SA-ALC contract F41608-00-D-0152, for a Model 5967-011 Hydraulic Rhino Jack (40 Ton), demonstrates sophisticated welding processes and capability necessary for heavy loads (50 times that of the proposed 1500 lb Crane) (see A.R. TAB 6, Regent Proposal, Vo. III);
- The Air Force Safety Center (AFSC) crane-related mishap spreadsheet (A.R. TAB 3, Supp. Protest, Exhibit "F") does not identify Regent as a subject crane manufacturer.
- East/West could also be a manufacturer on AFSC's spreadsheet.
- In a telephone call from Regent with the AFSC, Kirkland AFB, NM (Mr. Louie Alley) on May 10, 2006 it was stated that the AFSC spreadsheet was a "wild card search of crane incidents" and doesn't mean a crane caused the incident.
- The AFSC mishap spreadsheet on Jan. 18, 1998 at Homestead AFB, FL (for a Utility Crane weld separation) appears to be the Regent 1500 lb Crane (S/N 0060) incident mentioned above, which the Air Force agreed was caused by improper towing or other operator abuse/misuse.
- East/West's Protest allegations on "information and belief" are simply unsupported (who's information? who's belief? when? where?); which is typical of all of the East/West Protest claims.

This above factual information is in Regent's proposal and/or the agency record for its new USAF 1500 lb MAC Crane. It provided substantial support for the Air Force's initial evaluation and re-evaluation for award of the subject contract to Regent.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER.

B. **Regent's So-Called "Paper Crane" Design**

East/West also asserts that "Regent's crane required an untried mixture of multiple previous designs" (A.R. TAB 3, Supp. Protest, p. 6); and that "Regent's proposed crane is only a 'paper crane' that has never been actually manufactured" and "is an untried 'mixture' of existing designs" (A.R. TAB 3, Supp. Protest, p. 17); and that "Regent has never produced a crane with the complexities required by this contract" (A.R. TAB 3, Supp. Protest, p. 18); and "Regent's only experience is in manufacturing very basic, non-complex cranes" (A.R. TAB 3, Supp. Protest, p. 19).

The true facts are that Regent has been designing and developing complex cranes and lifting jacks over the last three decades for loads up to fifty times (50X) the 1,500 pound requirement of this contract. Whereas, East/West is the true newcomer in the crane industry. Its Master Crane proposed for this MAC Crane contract "is virtually the same as the cranes produced in" its exemplar contracts. (A.R. TAB 3, Supp. Protest, Exhibit "D", p. 2). The same Master Crane has been seriously criticized by the Air Force's senior procurement personnel as a "safety hazard" as recently as 2003, as follows:

- Regent's Model No. 75D110080-1001 U.S. Navy Crane (8,000 lb.) is "highly complex" (see A.R. TAB 6, Volume III of Regent's Proposal).
- 5X heavier loads than the subject proposed new USAF 1500 lb MAC Crane.
- Designed for use on Navy ships, with variable high-low horizontal/ vertical stress loads while used at sea.
- Also designed for multi-use on land (by U.S. Marine Corps).
- Motorized operation.
- Uses electrical controls.
- Adaptable for use under low ceiling heights on Navy aircraft carriers.
- 43 cranes sold to date.
- Mobile, 360° rotation.
- Regent's Model 9319-010 & -011 USAF Crane (1500 lb.) was a "design, develop, manufacture, test & build to MIL-SPEC" product, built in large quantities. It's very similar to the proposed new USAF 1500 lb. MAC Crane (see A.R. TAB 6, Regent Proposal, Vol. III); and Regent delivered over 360 of them in 3 years (i.e., in high-delivery quantities).
- Regent's Model 9504-010 USCG Crane (750 lb.) was also a "design develop, manufacture, test & build to MIL-SPEC"product, built in small quantities; but it has many requirements which virtually mirror the proposed new USAF 1500 lb. MAC Crane (see A.R. TAB 6, Regent Proposal, Vol. III).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER.

- Actually the three above-referenced Regent exemplar Contracts are all "Very Relevant" contracts, as compared to the proposed new USAF 1500 lb. MAC Crane... or should have been so evaluated.
- Regent's four exemplar contracts must, at a minimum, easily equal (and exceed) East/West's only "Very Relevant"past performance contract exemplar.
- Regent has successfully designed, developed and manufactured almost 500 cranes to military (and commercial) requirements for well over thirty years. Some of its cranes are significantly more complex than the East/West Master Crane, or that the Air Force requires in this "[MAC Crane] design, develop, manufacture" procurement for a replacement for Regent's current USAF 1500 lb. Floor Crane.
- Since East/West is currently proposing its so-called "Master Crane" the Air Force should be concerned about several problem areas previously reported about that particular Master Crane by an Air Force Commanding General at WR-ALC in 2003. They are, among others:
    (i) it doesn't meet the U.S. Air Force's needs for rapid overseas, mobility/deployment and operation in the field in hardened aircraft shelters (TAB VEE), particularly in the European theater; (see ¶s 3.3.9.2.,3.3.12 and 4.3.2.14 of the Purchase Description PD04WRLEEE19;
    (ii) it's a "safety hazard"; and
    (iii) its 350 lbs. too heavy for C-130 aircraft deployment (see the March 21, 2003 letter of Maj. Gen. Donald Wetekam, USAF, to the Hon. Joe Wilson, attached as **EXHIBIT "2"**).

Contrary to East/West's allegations "on information and belief", there is hard evidence that East/West did not address its own validated Master Crane safety and deployment problems in its proposal. Nor did East/West inform WR-ALC of its prior 2003 evaluation by General Wetekam. Yet it asserts that Regent's offered crane is not "technically acceptable" (A.R. TAB 3, Supp. Protest, p. 22). So, even if Regent's crane proposal had unmentioned safety problems, and it doesn't, there is no prejudice to East/West, which has not yet disclosed the Wetekam "technical unacceptability" to the current WR-ALC purchasing staff. See *CAE USA, Inc.*, supra at pages 16-17.

### C. Regent's Positive Trend In Meeting Delivery Schedules

East/West points out that "Regent has had documented difficulties in meeting deadlines" (A.R. TAB 3, Supp. Protest, p. 17); and that the initial 2005 evaluation



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER.

team found that "Regent had a 'negative trend' of occasionally not being able to meet required delivery schedules" (A.R. TAB 3, Supp. Protest, p. 18); and "the trend identified should have reasonably … raised 'some' doubt about whether Regent will successfully perform the required effort" (A.R. TAB 3, Supp. Protest, p. 19); and "the Air Force itself found that Regent has a trend of being unable to meet required delivery schedules pertaining to other contracts." (A.R. TAB 3, Supp. Protest, p. 19).

The true facts are that Regent has a "positive trend" of delivering its cranes early to the Government, as follows:

- Regent's Summary of Delivery Record of Regent's Past Performance Cases, attached as **EXHIBIT "3"**, shows that from the four "Past Performance"crane contracts exemplars in Regent's Proposal (i.e., only 4 were allowed by the RFP), totaling 396 cranes, 60% were actually delivered "early"(i.e., 236 of 396).
- This Summary also shows that 75% were delivered "on time per schedule" (i.e., 296-of 396).
- This Summary also shows that 25% were delivered "late" (i.e., 100 of 396).
- This Summary also shows that only 6.6% were delivered "over thirty days late"(i.e., 26 of 396); and, most of that (20 of 26) were in the 4th Quarter of 1999 as the final shipment of the 1500 lb USAF Floor Cranes.
- These data actually show a "positive trend"for Regent to deliver its cranes "early" to the U.S. military.
- Regent's quantum of "late"deliveries are heavily outweighed by its high volume of "early"deliveries.
- When analyzed in total, Regent's actual delivery record doesn't support a so-called "negative trend"of not meeting delivery schedules.



PROTECTED MATERIAL TO BE DISCLOSED
ONLY IN ACCORDANCE WITH GOVERNMENT
ACCOUNTABILITY OFFICE PROTECTIVE ORDER.

4. **Intervenor Concurs With The Agency Report**

The Agency Report concurs with and supplements Regent's above comments. Intervenor fully supports its well reasoned, fact-based, documented record and conclusion — that the GAO should deny the protest in its entirety.

Respectfully submitted,

Robert A. Brunette

**Regent Mfg., Inc.**

By: Robert A. Brunette, Esq.
Outside Counsel for Intervenor

cc: via Fax & U.S. Mail to:

Mr. Philip M. Dearborn III, Esq. &
Mr. Sandeep S. Kathuria, Esq.
PILIERO, MAZZA & PARAGAMENT, PLLC
888-17TH Street, N.W., Suite 1100
Washington, D.C. 20006
Phone: (202) 857-1000
Facsimile: (202) 857-0200
E-mail: pdearborn@pmplawfirm.com

Mr. Jeffrey Branstetter, USAF
AFLOA/JACN
1501 Wilson Boulevard, Room 606
Arlington, VA 22209-2403
Phone: (703) 696-9319 (direct line)
Facsimile: (703) 696-9084
E-mail: Jeffrey.branstetter@pentagon.af.mil



PROTECTED MATERIAL TO BE DISCLOSED
ONLY IN ACCORDANCE WITH GOVERNMENT
ACCOUNTABILITY OFFICE PROTECTIVE ORDER

# Summary of Weld Corrections

Contract No. SPO730-96-D-8007
1500 lb Portable Floor Crane
Regent Model 9319-011

3-Year requirement (1996 – 1999)
9 Delivery Orders Issued
360 Units delivered

28 JAN 98 – Report received from Warner Robins Air Logistics Center, GA (WR-ALC) that a towbar mount was only tack welded on. The towbar came off during towing at RAF Lakenheath in the UK. WR-ALC sent a message to all units to look for tack welds.

9 FEB 98 – Report received from WR-ALC of a weld failure at Homestead AFB in Florida. A "High Accident Potential Preliminary Report" was issued.

10 FEB 98 – WR-ALC issued a one-time inspection notice to all users, and requested inspection to be done within 7 days.

3 MAR 98 – Regent engineers visited Homestead AFB to inspect the damaged crane. Following is from Regent's report given to WR-ALC: *"All attendees agreed that something unusual (i.e., improper towing or other misuse) occurred to crane s/n 0060 that caused the structural areas adjacent to the mast lock lugs and the base plate mast lock lugs to be damaged due to extreme loads applied to the mast lock lugs."*

20 MAR 98 – WR-ALC reported that a HILL AFB inspection found 3 cranes that required repair to welds. WR-ALC requested guidelines from Regent.

20 MAR 98 – Regent issues "Weld Inspection Guidelines" to WR-ALC.

23 MAR 98 – WR-ALC requested changes to Guidelines.

31 MAR 98 – Regent issued revised "Weld Inspection Guidelines" to WR-ALC.

28 APR 98 – Inspection at WR-ALC found no weld discrepancies. No Quality Deficiency Reports (QDR) from field were reported.

No further weld discrepancies were reported to Regent

**EXHIBIT 1**



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER.

Summary: Of over 360 Model 9319-011 cranes were supplied under this Air Force contract, there were none with any reported "caster weld" problem as asserted by East/West in their protests. There was one unit (Lakenheath) with only a tack weld on the towbar. There was one unit (Homestead) subject to improper use, which resulted in a failure to the area adjacent to the mast lock, and 3 units (Hill) that were repaired following an inspection. The exact nature of the repairs on these 3 units is not found in our records.

The problem of improper welds was determined to be a manufacturing defect. Regent developed a simple visual inspection procedure in conjunction with WR-ALC. The problem was resolved quickly with Regent's full participation, including Regent's rapid dispatch of its engineers to Homestead to investigate. The problem never reoccurred and was satisfactorily resolved. No QDR was ever issued to Regent in connection with this contract.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH GOVERNMENT ACCOUNTABILITY OFFICE PROTECTIVE ORDER.

EXHIBIT 1

MAR-28-2003 11:31 FAX 703 588 7915 P.02

DEPARTMENT OF THE AIR FORCE
HQ WARNER ROBINS AIR LOGISTICS CENTER (AFMC)
ROBINS AIR FORCE BASE GEORGIA

21 March 2003

Major General Donald J. Wetekam
Commander
215 Page Road, Suite 245
Robins AFB GA 31098-1662

The Honorable Joe Wilson
House of Representatives
212 Cannon House Office Building
Washington, DC 20515-4002

Dear Congressman Wilson

Thank you for your inquiry dated February 24, 2003, regarding the Air Force (AF) procurement of a new 1500-pound egress crane. We sincerely understand and appreciate your concern in ensuring the best interests of both the Air Force and the taxpaying public are considered in this procurement. Please be assured that we share this same concern.

While the MasterCrane© is readily available, it does not meet all Air Force technical requirements. The Air Force Support Equipment & Vehicle Management Office procures equipment that is common to many different aircraft types. Therefore, before any acquisition, we obtain the technical and performance requirements for all intended Air Force users. Based on the requirements provided by all 1500-pound crane users, the MasterCrane© does not meet several key criteria:

- The crane must have a boom length of at least 78 inches. The MasterCrane©'s boom length is only approximately 45 inches.

- The crane must have a reach of 9-feet while the mast is vertical, at a 90-degree angle from the ground. The MasterCrane©'s mast must be tilted less than 90 degrees in order for it to obtain the 9-foot reach. This is unacceptable because with a tilted boom, maintenance stands cannot be properly located in accordance with Air Force technical orders, creating a safety hazard. Also a tilted mast increases the risk of damage to the aircraft.

- The crane must meet airlift requirements for transport in the C-130 aircraft. It must also be capable of working within a confined maintenance area. The MasterCrane© does not meet these requirements because it is over 350 pounds too heavy and its physical dimensions are too large.

- The crane users require a crane that is capable of being towed with a load on it. The MasterCrane© cannot be towed with a load on it.



EXHIBIT 2

201

There was language in the conference report accompanying the Appropriation Act stating that funds were included "for procurement of 1500 lb 'MasterCrane©.'" However, the Air Force General Counsel has concluded that this reference was insufficient to circumvent the requirements of the Competition in Contracting Act by contracting without full and open competition.

We believe pursuing a competitive procurement will provide the Air Force and the US taxpayers a fair and reasonable price for this crane. In the recent small business set aside procurement for the new crane, Regent Manufacturing was awarded $7.6M for their crane. This contract included testing, technical data, provisioning and the 241 production cranes. This amount was much less than the East-West Industries proposal

As you stated, the recent contract awarded for this crane was terminated. A new contract is currently being pursued using full and open competition procedures. We believe this will result in the best possible value for both the Air Force and for the US taxpayer. Although the current inventory of cranes enables us to meet mission requirements, given the imminent possibility of armed conflict, we are expediting this acquisition.

Sincerely

DONALD J. WETEKAM
Major General, USAF
Commander



EXHIBIT 2 202

Summary of Delivery Record on Regent's Past Performance Exemplar Contracts

1. Contract No. SPO730-96-D-8007 (Air Force)
   1500 lb Portable Floor Crane
   Regent Model 9319-011
   3-Year requirement (1996-1999)
   9 Delivery Orders Issued
   360 Units delivered
   45 delivered per schedule (not early) (12%)
   236 delivered early (66%)
   53 delivered within 30 days (15%)
   26 delivered over 30 days (7%)

   Note: 20 of the 26 units that were over 30-days late were in the very final three shipments (October, November and December of 1999). 5 units in October were 65 days late, 10 units in November were 68 days late and 5 units in December were 61 days late.

2. Contract No. NOO383-95-C-P396 (Navy/Marines)
   8000 lb Portable Crane
   Model 75D110080-1001
   8 Units delivered
   7 delivered early or on-time
   1 unit delivered 30 days late

3. Contract No. DTCG38-98-C-J007 (Coast Guard)
   1000 lb Helicopter recover Crane
   Regent Model 9504-010
   $152,000 Contract Value
   9 units delivered
   All 9 units delivered 10 days late

4. Contract No. F41608-00-D-0152
   40-ton Hydraulic Recovery Jack
   3-year Requirement
   Contract value $3.315 million
   19 units delivered
   11 units delivered late, all within 30 days of due date.



PROTECTED MATERIAL TO BE DISCLOSED
ONLY IN ACCORDANCE WITH GOVERNMENT
ACCOUNTABILITY OFFICE PROTECTIVE ORDER.

EXHIBIT 3