No. 06-563C
(Judge Bohdan A. Futey)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Bid Protest

EAST/WEST INDUSTRIES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

REGENT MANUFACTURING, INC.,

Intervenor.

---

DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277

Attorneys for Defendant

OF COUNSEL:

Major Jeffrey Branstetter
AFLOA/JACN
1501 Wilson Blvd., Room 606
Arlington VA 22209-2403

Dated: November 2, 2006

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 2

I. East/West Inaccurately Characterizes The United States' Arguments And Misstates The Standard Of Review . . . . . . . . . . 2

II. East/West Has Failed To Demonstrate That The April 2006 Contract Award Was Arbitrary, Capricious Or An Abuse Of Discretion . . . . . . . . . . 3

A. The Air Force Properly Conducted A Re-Evaluation Of Proposals . . . . . . . . . . 3

B. Regent's Proposal Represented The Best Value To The Government . . . . . . . . . . 5

1. The Proposal Risk Ratings Were Reasonable . . . . . . . . . . 6

2. The Past Performance Ratings Were Reasonable . . . . . . . . . . 7

3. The Award To East/West Was Rational And In Accordance With The Solicitation . . . . . . . . . . 8

III. Regent Did Not Fail To Disclose Defects In Its Cranes . . . . . . . . . . 9

IV. East/West's Unfounded, False Accusations Require A Direct Response . . . . . . . . . . 10

V. The Relief Requested By East/West Should Be Denied . . . . . . . . . . 11

A. East/West Has Not Established That It Is Entitled To Injunctive Relief . . . . . . . . . . 11

B. The Court Cannot Award The MACC Contract To East/West . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**Cases:**


Baird Corp. v. United States,
1 Cl. Ct. 662 (1983) . . . . . . . . . . 3, 4

CCL Service Corp. v. United States,
43 Fed. Cl. 680 (1999) . . . . . . . . . . 11

Durable Metals Prods., Inc. v. United States,
27 Fed. Cl. 472 aff'd, 11 F.3d 1071 (Fed. Cir. 1993) . . . . . . . . . . 11

Estee Lauder, Inc. v. L'oreal S.A.,
129 F.3d 588 (Fed. Cir. 1997) . . . . . . . . . . 9

Filtration Development v. United States,
60 Fed. Cl. 371 (2004) . . . . . . . . . . 3

Fort Carson Support Services v. United States,
71 Fed. Cl. 571 (2006) . . . . . . . . . . 8, 9

Hydro Engineering, Inc. v. United States,
37 Fed. Cl. 448 (1997) . . . . . . . . . . 12

Overstreet Elec. Co. v. United States,
59 Fed. Cl. 99 (2003) . . . . . . . . . . 3

Parcel 49C Ltd. Partnership v. United States,
31 F.3d 1147 (Fed. Cir. 1994) . . . . . . . . . . 11

Scanwell Lab., Inc. v. Shaffer,
424 F.2d 859 (D.C. Cir. 1970) . . . . . . . . . . 11

United Int'l Investigative Servs., Inc. v. United States,
41 Fed. Cl. 312 (1998) . . . . . . . . . . 12


**Statutes:**


5 U.S.C. § 706 . . . . . . . . . . 2

28 U.S.C. § 1491(b)(2) . . . . . . . . . . 11

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Bid Protest**

| | | |
|---|---|---|
| EAST/WEST INDUSTRIES, INC., Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES, Defendant, | ) | No. 06-563C (Judge Futey) |
| and | ) | |
| REGENT MFG., INC., Defendant-Intervenor. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

## INTRODUCTION

In our cross-motion, we explained that East/West had based its protest upon innuendo, bluster and superseded draft documents. Def.'s Cross-Motion at 1. East/West's response brief simply contains more of the same. East/West, for instance, offers no evidence that the Air Force conducted its re-evaluation of proposals in bad faith or that Regent concealed latent defects. Bluster and unsupported allegations are not a substitute for evidence in the administrative record. East/West has provided no basis for setting aside the Air Force's well-reasoned award to Regent.

In arguing for an injunction, East/West states that it is "essentially the de facto incumbent and has been and will continue to supply . . . cranes to the Air Force." Pl.'s Response at 10. East/West is apparently less interested in this contract than in "continu[ing] to supply" off-the-shelf cranes on a sole source basis – cranes that are less desirable and cost more than twice as much as Regent's competitively-procured crane. East/West's repeated protests have delayed this

contract far too long. The Court should reject East/West's protest and allow the Air Force to obtain the crane it purchased to support its operations around the world.

## ARGUMENT

### I. East/West Inaccurately Characterizes The United States' Arguments And Misstates The Standard Of Review

As we previously explained, this Court reviews allegations of error in the contract award process under the deferential standard set forth in 5 U.S.C. § 706. Def.'s Cross-Motion at 4 (citing 28 U.S.C. § 1491(b)(4); Tech Systems, Inc. v. United States, 50 Fed. Cl. 216, 221 (2001)). An award may be set aside only if the awarding agency's actions are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Id. (quoting 5 U.S.C. § 706).

Disregarding this plain statement of the applicable standard of review, East/West asserts that the United States "would like the Court to believe that the award [to Regent] was justified simply because the GAO ruled against East/West." Pl.'s Response at 1 (stating that the United States is "apparently under the complete misconception that the GAO decision is final and sufficient"). East/West mischaracterizes the United States' argument. The Court must determine whether the award to Regent was arbitrary and capricious based upon the administrative record. However, in making that assessment, the Court need not act in a vacuum. Here, the GAO offered a clear and cogent explanation about why the Air Force had acted reasonably in awarding Regent the MACC contract. AR1213-21. The GAO decision, therefore,

strongly supports the conclusion that the Air Force's re-evaluation was neither arbitrary nor capricious.[1]

East/West also misstates the standard for granting injunctive relief. See Pl.'s Response at 3. "Injunctive relief is an extraordinary remedy and plaintiff must demonstrate its entitlement to such relief by clear and convincing evidence." Filtration Development v. United States, 60 Fed. Cl. 371, 384 (2004) (Futey, J.) (citing CACI, Inc.-Fed. v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983), and Cincom Sys., Inc. v. United States, 37 Fed. Cl. 266, 268 (1997)) (emphasis added); see also Overstreet Elec. Co. v. United States, 59 Fed. Cl. 99, 109-10 (2003); Baird Corp. v. United States, 1 Cl. Ct. 662, 664 (1983). East/West has not met this standard.

## II. East/West Has Failed To Demonstrate That The April 2006 Contract Award Was Arbitrary, Capricious Or An Abuse Of Discretion

### A. The Air Force Properly Conducted A Re-Evaluation Of Proposals

In September 2005, the Air Force awarded the MACC contract to Regent. AR0018; see also AR1041-46. When East/West filed a GAO protest in October 2005, the Air Force agreed to take corrective action. AR0018, 1075. The Air Force explained that it would:

> use a new evaluation team; reevaluate the competitive range proposals of Regent, East-West, and a third offeror; and, depending on the reevaluation results, may or may not reopen discussions and obtain new final revised proposals.

[1] In a footnote, East/West suggests that the record before the GAO was incomplete. Pl.'s Response at 2 n.1. East/West identifies no documents pertaining to the 2006 re-evaluation that were not before the GAO. See id. Documents pertaining to the prior September 2005 award decision were not relevant. See AR1075. Further, East/West was free to (and did) place before the GAO any documents that it considered relevant to its protest of the April 2006 source selection decision. See AR5484-98.

AR1075. As a result, the September 2005 award to Regent was set aside and East/West's GAO protest was dismissed. Id.

Upon dismissal of the GAO protest, the Air Force assembled a new evaluation team headed by a new contracting officer. AR0019-20, 1139-45. This team re-evaluated the final proposals of Regent, East/West and Goodcrane that had been submitted to the Air Force in August 2005. Id. Based upon the results of this re-evaluation, an award was made to Regent in April 2006. AR0019, 1139-45.

In its response brief, East/West suggests that the Air Force failed to perform the agreed upon corrective action. See Pl.'s Response at 4-8. Specifically, East/West contends that a new technical team should have been assembled to perform a new technical and risk assessment. Id. at 4-5. The corrective action, however, called only for a re-evaluation of "competitive range proposals" by "a new evaluation team." AR1075. The Air Force did just that. AR1139-45. Furthermore, East/West has established no prejudice. The competitive range proposals were unchanged and East/West has identified no errors in the technical team's September 15, 2005, analysis. East/West has, thus, failed to establish that a new engineering team would have found Regent's proposal technically unacceptable. See AR4980-81 (concluding that Regent "is offering a sound design" and assigning a "low risk" rating to each sub-factor being considered). Because a new technical evaluation was not required by the corrective action, and because it would have served no salutary purpose, East/West's objection that the re-evaluation relied, in part, upon the technical team's September 15, 2005, analysis is without merit.

East/West also raises objections about Elaine Moore's supposed role in the re-evaluation. See Pl.'s Response at 5-7. East/West points to a single, one-page e-mail to argue that Ms. Moore

"was an integral part of the . . . second evaluation team" and that "her role was that of supervisor." Pl.'s Response at 5-6 (citing AR4985). We explained in our principal brief that Ms. Moore was not a member of the Air Force evaluation team. Def.'s Cross-Motion at 23 (citing AR5253, 5256). She is employed by the Air Force's acquisition center for excellence ("ACE"), where she is available as an advisor. AR5162-63, 5253-54. The contracting officer in charge of the re-evaluation did not seek or obtain advice from Ms. Moore. See AR5255. Consequently, Ms. Moore had no input or effect upon the April 2006 award decision.

East/West questions why Ms. Moore requested copies of the final decision document in the re-evaluation. Pl.'s Response at 6. The answer, as East/West is well aware, is that Ms. Moore was required to provide monthly reports to her own supervisor on solicitations where she was the ACE advisor. AR5243.

In sum, Ms. Moore gave no advice about, much less directed or supervised, the April 2006 award to Regent. East/West's assertions to the contrary find no supported in either the administrative record or Ms. Moore's own deposition testimony.

**B. Regent's Proposal Represented The Best Value To The Government**

As explained in our principal brief, the solicitation provides that proposals will be evaluated using the "Technically Acceptable – Risk, Performance, Price Tradeoff (TA-RPPT) source selection procedure." Def.'s Cross-Motion at 8 (citing AR218). The TA-RPPT procedure is a simplified best value approach. Id.; AR5254.

In the re-evaluation, both East/West and Regent were found to be technically acceptable, received "low" risk ratings, and received "very good/significant confidence" past performance

ratings. AR1141-43. Regent's proposal was $543,490 less costly than East/West's proposal. AR1144.

The Air Force's evaluation of technical acceptability and price are not in dispute. With respect to proposal risk and past performance, the Air Force articulated a rational basis for its ratings. AR1108-26, 1141-43. Finally, because East/West and Regent received the same proposal risk and past performance ratings, the Air Force reasonably concluded that Regent's lower priced proposal constituted the best value.

**1. <u>The Proposal Risk Ratings Were Reasonable</u>**

In its re-evaluation, the Air Force relied, in part, upon the final report of the Air Force's technical team. AR1141-42, 4979-82. This report was prepared by Air Force engineers, was completed on September 15, 2005, found the proposals of both East/West and Regent to be technically acceptable, and rated both East/West and Regent to be low risk. AR4979-82.

East/West objects that Regent received a low risk rating because Regent's crane design was based upon two cranes that the company had previously produced. Pl.'s Response at 8 (describing Regent as offering an "untried 'paper' crane"). However, East/West's own proposal was a modification of an existing crane design. AR1141 (noting that there was "some concern regarding the amount of change [East/West] would make to the mast and boom and whether the changes had the potential to cause disruption"). Given that East/West and Regent both proposed a modification of a current design, East/West's "paper crane" argument provides no basis for differentiating between the two offerors.

### 2. **The Past Performance Ratings Were Reasonable**

East/West asserts that Regent should have been given a lower rating because of supposed past delivery problems.[2] Pl.'s Response Br. at 8 (citing AR5030).[3] Regent's customers gave it good ratings and identified no problems with late deliveries. See, e.g., AR1121 ("Regent responded to the customer's needs and even tried to deliver early."); AR1124 (Regent "received all positive comments on their past performance reviews."). Additionally, while there was some information in PPIRS regarding late deliveries, "Regent's proposal acknowledged these problems and explained the corrective action it had taken to change processes to eliminate the delinquencies." AR1218.

The solicitation itself states that it is "not presumed that the offerors performance has been perfect." AR207. Rather, proposals are to "contain evidence of the offeror's ability to isolate the root causes of problems and [describe] actions taken to resolve those root causes." Id. Regent provided such information in its proposal and, in arriving at a past performance rating, the Air Force considered the actions taken by Regent to ensure timely deliveries. See AR1218. Indeed, in connection with the re-evaluation, the Air Force requested an audit of Regent by the Defense Contracting Management Agency ("DCMA"). AR1124, 1130. The DCMA determined that Regent's on-time delivery had exceeded 90 percent over the past year and that it had experienced no quality issues. AR1124, 1130, 1218. Consequently, the new evaluation team

---

[2] East/West mistakenly discusses late deliveries on past contracts in its section on proposal risk, rather than in connection with past performance. See AR0219 (defining "proposal risk" as "the risk associated with the offeror's proposed approach").

[3] In our cross-motion, we mistakenly asserted that AR5030 was not a part of the administrative record. See Def.'s Cross-Motion at 16. It was in fact added as the last page of the October 6, 2006, supplement to the record.

concluded that Regent had addressed, and successfully resolved, the minor delivery issues it had experienced in the past. See AR1124, 1130.

Therefore, as discussed in greater detail in our principal brief, the Air Force reasonably concluded that the past performance of Regent warranted a "very good/significant confidence" rating. Def.'s Cross-Motion at 11-15 (describing "very good/significant confidence" as "little doubt exists that the offeror will successfully perform the contract."); see also AR1108-26 (assessing past performance in the 19-page PCAG report).

**3. The Award To East/West Was Rational And In Accordance With The Solicitation**

Without elaboration, East/West asserts that "the Air Force has failed to provide sufficient facts and reasons to justify an award to Regent." Pl.'s Response at 8. East/West is mistaken. The basis for the award to Regent is well-reasoned and is provided in the decision document in the administrative record. AR1139-45; see also AR1108-26 (past performance report); AR4979-82 (technical evaluation). Simply put, the Air Force reasonably concluded that Regent was the best value because its risk and past performance ratings were the same as East/West, and its proposed price was a half million dollars lower. Id.

Relying upon Fort Carson Support Services v. United States, 71 Fed. Cl. 571, 588 (2006), East/West argues that the Air Force's award decision was "premised upon an incorrect understanding of the evaluation process, i.e., that the adjectival ratings given to offerors are themselves determinative." Pl.'s Response at 7. East/West's reliance upon Fort Carson is misplaced for the simple reason that the agency in Fort Carson utilized a different kind of solicitation. See 71 Fed. Cl. at 588 (describing a solicitation that called for a "tradeoff process among the factors, subfactors and *elements*") (emphasis in original); AR218-23 (describing the

simplified TA-RPPT approach in this action). As the court in Fort Carson explained, a best-value tradeoff might well have been unnecessary had the agency followed a different source selection plan. Id. at 587.

Furthermore, in Fort Carson, unlike this matter, the offerors did not receive identical ratings. Id. at 588. Here, both Regent and East/West received the same risk and past performance ratings. As the Air Force explained, although the solicitation provided that proposal risk and past performance were more important than price, where two offerors receive the same ratings, price becomes determinative. AR1144-45. The Air Force correctly evaluated offers in accordance the TA-RPPT source selection procedure.

## III. Regent Did Not Fail To Disclose Defects In Its Cranes

Citing only its own GAO briefs, East/West claims that "the evidence of Regent's many design flaws is well documented." Pl.'s Response at 9. It is well-established, however, that "arguments of counsel cannot take the place of evidence lacking in the record." Estee Lauder, Inc. v. L'oreal S.A., 129 F.3d 588, 595 (Fed. Cir. 1997). East/West's GAO briefs, being simply arguments made by East/West's counsel, do not constitute substantive evidence. Id. Put differently, East/West cannot use its own arguments to the GAO as factual support for its arguments in this protest.[4] East/West has, thus, failed to establish that Regent did not disclose any information to the Air Force in conjunction with its proposal.

---

[4] The arguments made to the GAO about Regent's supposed non-disclosures were rejected upon the merits. AR1218-20; see also AR0028 (the incident identified by East/West before the GAO "was not the result of a deficiency with the crane").

## IV. East/West's Unfounded, False Accusations Require A Direct Response

In its response brief, East/West states that the United States "knowingly withheld" documents from the administrative record filed on August 18, 2006. Pl.'s Response at 5; see also id. at 2 n.1. East/West has no good faith basis for this serious charge. Indeed, the United States asked East/West to identify any documents that in its view should be included in the administrative record. It was not until October 2, 2006, that East/West responded to this request. Four days later, the United States moved to add to the administrate record each and every document identified by East/West.[5] See Def.'s Unopposed Mot. To Supplement The Administrative Record (filed Oct. 6, 2006). East/West's charge that the United States withheld documents in this matter is utterly baseless.

East/West also states that "Regent's cranes have a track record of injuring those who operate them." Pl.'s Response at 11 (citing AR5488-98). Again, East/West's serious charge is false. In fact, the very incident reports cited by East/West contradict its claim. See AR5490 ("There was no injury associated with this incident."); AR5491 ("There were no injuries to the workers and no damage to the aircraft."). Thus, East/West has proffered no evidence that anyone has been injured in any incident involving a Regent crane, much less an incident caused by a latent defect. Similarly, East/West proffers no support for the remainder of the parade of horribles in the "public interest" section of its brief. See Pl.'s Response at 10-11 (failing to provide administrative record cites).

---

[5] East/West did not identify its briefs in the October 2005 GAO protest in its letter. East/West subsequently moved to add these documents to the administrative record, which the United States opposed.

## V. The Relief Requested By East/West Should Be Denied

### A. East/West Has Not Established That It Is Entitled To Injunctive Relief

East/West has failed to establish by clear and convincing evidence that it is entitled to injunctive relief. As explained above and in our principal brief, far from being arbitrary, capricious, or an abuse of discretion, the contract award to Regent was the product of careful and reasoned deliberation by the Air Force. East/West has not, therefore, prevailed upon the merits. Additionally, given that the award to Regent was appropriate under the terms of the solicitation, the balance of harms and the public interest also dictate that East/West's request for an injunction be denied.

### B. The Court Cannot Award The MACC Contract To East/West

In addition to requesting a permanent injunction, East/West asks the Court for an order "directing the Air Force to award the contract to East/West." Pl.'s Response at 11. Under well-established precedent, the Court does not have authority to grant this relief. Parcel 49C Ltd. Partnership v. United States, 31 F.3d 1147, 1152-53 (Fed. Cir. 1994); Durable Metals Prods., Inc. v. United States, 27 Fed. Cl. 472, 476-77, aff'd, 11 F.3d 1071 (Fed. Cir. 1993) ("[T]he equitable jurisdiction of this court does not include the authority to award a contract as plaintiff requests"); see also Scanwell Lab., Inc. v. Shaffer, 424 F.2d 859, 869 (D.C. Cir. 1970) ("It is indisputable that the ultimate grant of a contract must be left to the discretion of a government agency; the courts will not make contracts for the parties"). Although a 1996 amendment to the Tucker Act empowered the Court to "award any relief that the court considers proper, including declaratory and injunctive relief," 28 U.S.C. § 1491(b)(2), this language does not authorize the Court to direct the award of contracts to disappointed bidders. See CCL Service Corp. v. United

States, 43 Fed. Cl. 680, 688 (1999) (citing earlier decisions as good law, especially in light of the duty to interpret waivers of sovereign immunity narrowly); United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. 312, 323-24 (1998) (citing Hydro Engineering, Inc. v. United States, 37 Fed. Cl. 448, 461 (1997)). Accordingly, even if East/West were to prevail upon the merits, its request that it be awarded the contract at issue must be denied.

**CONCLUSION**

For these reasons, we respectfully request that the Court grant the United States' cross-motion for judgment upon the administrative record.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Franklin E. White, Jr.

FRANKLIN E. WHITE, JR.
Assistant Director

s/ David A. Harrington

DAVID A. HARRINGTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0277

Dated: November 2, 2006

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on 2nd day of November, 2006, a copy of "DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David A. Harrington