# In the United States Court of Federal Claims

**NOT FOR PUBLICATION**
**No. 06-563C**
<u>**Bid Protest**</u>

**(Originally Filed Under Seal November 20, 2006)**
**(Reissued December 8, 2006)**

```
* * * * * * * * * * * * * * * * * * * * * * *
                                            *
EAST/WEST INDUSTRIES, INC.                  *
                                            *
              Plaintiff,                     *
                                            *
      v.                                     *
                                            *
THE UNITED STATES,                          *
                                            *
              Defendant,                      *
                                            *
REGENT MANUFACTURING, INC.,                 *
                                            *
              Intervenor.                    *
                                            *
* * * * * * * * * * * * * * * * * * * * * * *
```

    ***Philip M. Dearborn***, Washington, D.C., attorney of record for plaintiff, East/West Industries, Inc.

    ***David A. Harrington***, Department of Justice, Washington, D.C.**,** with whom was ***Assistant Attorney General Peter D. Keisler,*** for defendant. ***David M. Cohen***, Director, and ***Franklin E. White, Jr.***, Assistant Director.

    ***Robert A. Brunette***, Glendale, CA., Counsel for Intervenor, Regent Manufacturing, Inc.

**OPINION & ORDER**

*Futey*, **Judge**.

This post-award bid protest matter[1] is before the court on the parties' corresponding cross-motions for judgment on the administrative record,[2] as well as plaintiff East/West Industries, Inc.'s (East/West) request for a permanent injunction. Plaintiff also moves this court to award it the contract in lieu of Intervenor Regent Manufacturing, Inc. (Regent). Plaintiff alleges that the Air Force acted arbitrarily and capriciously in awarding the contract at issue to Regent instead of East/West because East/West's cranes are technically superior and it is a lower risk supplier than Regent. Plaintiff claims that the Air Force acknowledged these facts, but for some unknown reason, was determined to award the contract to Regent. Plaintiff also maintains that despite the fact that defendant claimed it performed a re-evaluation after plaintiff's initial protest of the award to Regent, this re-evaluation was a sham. Defendant avers that the Air Force followed proper procedures and the contract was rightfully awarded to Regent based on the factors listed in the solicitation both in the initial evaluation and the re-evaluation. Intervenor joins defendant's arguments and claims that nothing in the record shows that the Air Force unreasonably chose Regent as the successful bidder. Upon review of the record and the parties' arguments, the court concludes that plaintiff failed to demonstrate that the Air Force was arbitrary, capricious, abused its discretion, or violated any statute or regulation in awarding the contract at issue to Regent. Because plaintiff has not succeeded on the merits, its request for injunctive relief is moot.

Background

At issue is an Air Force contract for the production of multi-aircraft canopy cranes (MACC). MACCs are cranes used to remove and install aircraft components, such as canopies, ejection seats, and rotors with sufficient clearance to preclude any contact with aircraft structures such as fuel tanks and landing gears. The aircrafts that will be serviced by the MACCs include the Joint Strike Fighters, A-10, HH-60

---

[1]     In its complaint, plaintiff lists seven counts against defendant. Counts I, II, III, and IV are the bid protest claims addressed herein. By agreement and order of the court dated August 9, 2006, counts V, VI, and VII, the patent infringement claims, were stayed until further order of the court.

[2]     Plaintiff alternately titled its motion "Plaintiff's Second Motion For Summary Judgment", "Plaintiff's Second Motion For Judgment On The Administrative Record", and in its briefs referred to the motion as "East/West's motion for summary judgment on the record." For these purposes, we consider plaintiff's motion to be a Motion for Judgment on the Administrative Record.

helicopter, F-15, F-16, F-22, F-117, and T-38 aircrafts.  On May 24, 2004, the Air Force published a request for proposals for the development and production of up to 360 MACCs to be made in cooperation with Warner-Robins Air Force Base (Warner-Robins).

The solicitation stated that proposals would be evaluated using the "Technically Acceptable-Risk, Performance, Price Tradeoff (TA-RPPT) source selection procedure."[3]  The TA-RPPT is a simplified "best value" evaluation of the offerors' bids used by Warner-Robins.  The first step in the TA-RPPT analysis is the assessment of technical acceptability of the bids.  Only those offers that are deemed to be technically acceptable are given further consideration.  Six parties submitted offers.  Out of these, three offers (by East/West, Regent, and Goodcrane) were deemed technically acceptable.

The second step of the TA-RPPT analysis is an evaluation of proposal risk, past performance, and price.  Proposal risk is defined as "the risk associated with the offeror's approach as it relates to accomplishing the requirements of the solicitation."[4]  Risk has three ratings: high, medium and low.  Past performance is defined as "the confidence in the offeror's ability . . . to successfully accomplish the proposed effort based on the offeror's demonstrated present and past work record."[5]  The past performance factor has six ratings ranging from "exceptional/high confidence" to "unsatisfactory/no confidence."  There is also a formula for calculating a "total evaluated price" for each offer.

The final step in the TA-RPPT analysis is a tradeoff analysis.  The solicitation states that the contract will be awarded to "the responsible offeror who demonstrates the ability to meet all of the technical requirements *and* who also provides the best value offer with respect to risk, performance and price."[6]  The solicitation also advises that "risk and past performance [are] considered equal to each other and significantly more important than price."[7]  In addition, the solicitation declares that "the tradeoff process by its nature is subjective."[8]  The solicitation does not explicitly

---

[3] ***Administrative Record (AR) at 218***.

[4] ***AR at 219.***

[5] ***AR at 220.***

[6] ***AR at 218.*** (emphasis in original).

[7] ***Id.***

[8] ***Id.***

explain how the offers are to be evaluated if the risk and past performance ratings are identical. Defendant maintains, however, that the Air Force interprets the TA-RPPT analysis to mean that, in the case of a tie in the ratings for risk and past performance, price becomes the determining factor in awarding the contract.

After the Air Force determined that only Regent's, Goodcrane's, and plaintiff's cranes were technically acceptable, it evaluated all three on risk, past performance, and price tradeoff. In March 2005, Theresa Minton, the contracting officer,[9] circulated a draft source selection document which proposed that the procurement be awarded to plaintiff. Among the draft recipients was Elaine Moore, an advisor with the Air Force's Acquisition Center for Excellence (ACE). Ms. Moore's job at ACE is to be "a resource if questions come up about a particular solicitation."[10] Essentially, her responsibility on this procurement was to advise Ms. Minton on how to properly do the procurement evaluation although she did not have the power to direct the contract award. Ms. Moore reviewed the draft source selection document and informed Ms. Minton that the evaluation was improper because it distinguished between degrees of risks within a single risk classification, *i.e.*, a lower low risk or a higher low risk, which she asserted could not be done in a TA-RPPT procurement.

Six months later, on September 12, 2005, Ms. Minton circulated an e-mail at 12:33 p.m. which contained a recommendation to award the contract to East/West. The same day, she followed up with a second e-mail at 1:58 p.m. providing an updated draft source selection document which instead suggested awarding the contract to Regent. Ms. Minton testified in her deposition that the seemingly conflicting awards was merely a technical error on her part. She asserted that she had attached the wrong document - an early draft decision - to the 12:33 p.m. e-mail and that the award was always meant to go to Regent.[11]

The MACC contract was awarded to Regent four days later on September 16, 2005. Soon after, East/West filed a protest with the Government Accounting Office (GAO) in October 2005. In response to the protest, the Air Force agreed to take corrective action which consisted of the following:

---

[9]     Warner-Robins uses the title "Source Selection Authority" (SSA) for its contracting officers.

[10]     ***Oral Argument Transcript (Tr.) at 32.***

[11]     ***AR at 5084.***

use a new evaluation team; reevaluate the competitive range
proposals of Regent, East/West, and a third offeror; and, depending
on the reevaluation results, may or may not reopen discussions and
obtain new final revised proposals.[12]

As a consequence, the GAO dismissed East/West's protest.

The Air Force then assembled a new evaluation team.[13]   Salena Arrington
replaced Ms. Minton as the new contracting officer for the procurement.   The re-
evaluation did not start from square one, but instead used the original technical
team's analysis.  Defendant maintains that there was no need to form a new technical
team because the agreed corrective action did not call for one. The only overlap
between the original procurement team was Ms. Moore, who continued to participate
as the ACE advisor to the contract.  A review of the record reveals that Ms. Moore
again reviewed the draft source selection decision documents and made suggestions
to the contracting officer.  For example, in one e-mail she directed a contract
specialist to "delete relevancy rating from the SSDD [source selection decision
document.]"[14]  Ms. Moore also circulated two e-mails which indicated her
"concurrence" with the Performance Confidence Assessment Group (PCAG) and the
source selection decision document. Ms. Moore testified at her deposition that her
role in the re-evaluation was restricted to reading over the March 2006 PCAG report
and the April 2006 source selection decision document.  She further stated that she
could not direct the contracting officer to award the contract to any offeror.

On April 18, 2006, the contracting officer issued the final source selection
decision document awarding the MACC contract to Regent.   The document
explained the decision to award the contract to Regent as follows:

The RFP provision "Evaluation Basis for Award" directed that this
acquisition would utilize the Technically Acceptable-Risk
Performance/Price Tradeoff (TA-RPPT) source selection procedure
to make an integrated assessment for a best value award decision . .
. . East/West, Goodcrane, and Regent were evaluated as being
technically acceptable and were evaluated as a low risk, meaning their
proposal had little potential to cause disruption of schedule, increased
cost, or degradation of performance. . . . Based on the information
gathered and documented during the evaluation process, a trade-off

[12]      *AR at 18.*

[13]      *AR at 14, 18, 1108-26, 1139-45.*

[14]      *AR at 4985.*

between past/present performance and price is not necessary because East/West Industries and Regent Manufacturing were both technically acceptable and assessed with a good/significant confidence. Hence, when all factors are equal, the lowest total evaluated price takes precedence.[15]

As a result, plaintiff filed a second GAO protest challenging the award to Regent. The GAO denied the protest on the basis that the "Air Force had appropriately evaluated the past performance of both plaintiff and Regent, that the Air Force had no obligation to obtain and consider 'outside information' potentially bearing upon past performance, and that there was no basis for concluding that any incidents raised by East/West concerned 'quality deficiencies or latent defects' that Regent was required to report."[16] Subsequently, plaintiff filed a complaint with this court challenging the award.

<u>Discussion</u>

I.    Standard of Review

"A Motion for Judgment on the Administrative Record, pursuant to RCFC 52.1, is similar but not identical to a Motion for Summary Judgment, pursuant to RCFC 56." *Info. Sci. Corp. v. United States*, 73 Fed. Cl. 70, 97-98 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355 (Fed. Cir. 2005)). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. **RCFC** 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Jay v. Sec'y, DHHS*, 998 F.2d 979, 982 (Fed. Cir. 1993). In contrast, the court "must under Rule [52.1], weigh[] the evidence" when considering a Motion for Judgment on the Administrative Record. *Bannum*, 404 F.3d at 1355. RCFC 52.1 is "designed to provide for a trial on a paper record, allowing fact-finding by the trial court." *Bannum*, 404 F.3d at 1356.

Congress amended the Tucker Act in 1996 by granting this court jurisdiction to hear post-award bid protest actions. 28 U.S.C. § 1491(b)(4). The court reviews the challenged agency decisions according to the standards set out in the Administrative Procedures Act (APA), 5 U.S.C. § 706. *Impreza Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations omitted). In particular, the court must determine whether the agency's

---

[15]     *AR at 1144.*

[16]     *Def.'s Response to Pl.'s Motion For Summary Judgment And Cross-Motion For Judgment Upon The Administrative Record at 3-4* (quoting *AR at 1212-21*).

actions were arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). A bid award may be set aside, therefore, "if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impreza*, 238 F.3d at 1332 (citations omitted).

In determining whether the agency has acted arbitrarily and capriciously toward plaintiff, the court must consider four factors. *Keco Indus., Inc. v. United States*, 203 Ct. Cl. 566, 574 (1974). Specifically, the court must determine whether: (1) there was subjective bad faith on the part of the procuring officials; (2) there was a reasonable basis for the procurement decision; (3) the procuring officials abused their discretion; and (4) pertinent statutes and regulations were violated. *Id.*; *see also Aero Corp., S.A. v. United States*, 38 Fed. Cl. 739, 749 (1997). There is, however, "no requirement or implication . . . that each of the factors must be present in order to establish arbitrary and capricious action by the government." *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed. Cir. 1988). The court must also "give due regard to the interests of national defense and national security and the need for expeditious resolution of the action." 28 U.S.C. § 1491(b)(3).

When reviewing agency action, the APA requires a "thorough, probing, in-depth review" to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. United States*, 401 U.S. 402, 415-16 (1971). In examining an agency's procurement action, the agency is given wide discretion in the application of procurement regulations. *Bellevue Bus Serv., Inc. v. United States*, 15 Cl. Ct. 131, 133 (1988); *CACI Field Servs., Inc. v. United States*, 13 Cl. Ct. 718, 725 (1987), *aff'd*, 854 F.2d 464 (Fed. Cir. 1988). In this regard, the court cannot substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions. *CRC Marine Servs., Inc. v. United States*, 41 Fed. Cl. 66, 83 (1998). Indeed, "[t]he court should not substitute its judgment on such matters for that of the agency, but should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable." *Baird Corp. v. United States*, 1 Cl. Ct. 662, 664 (1983). As long as a rational basis is articulated, and relevant factors are considered, the agency's actions must be upheld. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974).

The "disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.'" *Impreza*, 238 F.3d at 1333 (citing *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C. Cir. 1994)). When a protestor is asserting a violation of regulation or procedure, "the disappointed bidder must show a 'clear and prejudicial violation of applicable statutes or regulations.'" *Id.* (citing *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973); *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)).

Moreover, "to prevail in a protest the protestor must show not only a significant error in the procurement process, but also that the error prejudiced it." ***Data Gen. Corp. v. Johnson***, 78 F.3d 1556, 1562 (Fed. Cir. 1996). To establish prejudice, a protestor must demonstrate that but for the alleged error, there was a substantial chance it would have received the award. ***Statistica, Inc. v. Christopher***, 102 F.3d 1577, 1581 (Fed. Cir. 1996).

Decisions by the GAO are traditionally given a high degree of deference by the courts, particularly in bid protest cases. ***E.W. Bliss Co. v. United States***, 33 Fed. Cl. 123, 135 (1995), ***aff'd*** 77 F.3d 445 (Fed. Cir. 1996). Although GAO decisions are not binding upon the Court of Federal Claims, they may be considered as "expert opinions," which the court should prudently consider. ***Hawaiian Dredging Co. v. United States***, 59 Fed. Cl. 305, 311 (2004). The court, however "is not bound by the views of the Comptroller General nor do they operate as a legal or judicial determination of the rights of the parties." ***Burroughs Corp. v. United States***, 223 Ct. Cl. 53, 63 (1980). Thus, this court affords deference to the GAO's denial of plaintiff's protest to the extent that it discusses the merits of plaintiff's case. ***See MTB Group, Inc. v. United States***, 65 Fed. Cl. 516, 525 (2005).

II.     The Contracting Officer Used Her Independent Judgment and Reasonably Interpreted the Terms of the TA-RPPT Source Selection Procedure in Awarding the Contract to Regent

Plaintiff claims that it would have been awarded the MACC contract based upon Ms. Minton's March 14, 2005 draft source selection decision in its favor, but for the intervention of Ms. Moore. This award decision, however, is not formally before the court because the Air Force conducted a re-evaluation of offers. Even though the September 2005 award is not before the court for review, the process by which that award was made is potentially relevant to plaintiff's argument that the erroneous advice of a procuring official in the first award contaminated the second award in April 2006. Specifically, at oral argument, plaintiff's counsel asserted that the contracting officers did not exercise their independent judgment as required by 48 C.F.R. § 15.308 because of Ms. Moore's intervention. ***See 48 C.F.R. § 15.308*** ("[T]he source selection decision shall represent the SSA's independent judgment"); ***see also***, ***Tr. at 13-14*** (citing ***Info. Sci.***, 73 Fed. Cl. 70 (2006)).[17]

_____

[17]     In response to a question from the court at oral argument as to whether Ms. Arrington's decision to award the contract to Regent after the re-evaluation was arbitrary and capricious, plaintiff's counsel stated that plaintiff does not allege that the award of the contract was arbitrary. ***Tr. at 14***. Later in the oral argument, however, plaintiff's counsel, alleged, as explored in further detail below, that the contracting officer arbitrarily assigned Regent an incorrect past performance ranking.
(continued...)

The Court does not find that Ms. Moore's advice prevented either contracting officer from exercising her independent judgment. There is no evidence in the record that contradicts Ms. Moore's deposition testimony that her role was purely advisory and that she could not direct the award of any contract. Similarly, plaintiff did not provide any evidence that refutes Ms. Moore's testimony that although she could make recommendations to the contracting officer, the contracting officer was free to follow or disregard her advice.[18] Therefore, Ms. Moore's involvement in the procurement does not make the award arbitrary or capricious, nor was it a violation of any regulation or standard.

Plaintiff argues that Ms. Moore's advice that the contracting officer could not differentiate within a risk category is contrary to *Fort Carson Support Services v. United States*, 71 Fed. Cl. 571, 588 (2006) and that the award was, therefore, unreasonable. The court in *Fort Carson* stated that, in the context of the "best value" solicitation at issue in that case, it was an "incorrect understanding of the evaluation process [to assert that] the adjectival ratings given to offerors are themselves determinative." *Id.* Both defendant and intervenor maintain that *Fort Carson* is not applicable because the solicitation in that case had different language and requirements than the one here.

The court agrees with defendant and intervenor that *Fort Carson* is irrelevant because the procurement at issue in *Fort Carson* called for a "tradeoff process among the factors, subfactors, and *elements*," while the tradeoff process in a TA-RPPT procurement does not call for an analysis of the elements. *Id.* (emphasis in original). Thus, Ms. Moore's advice, namely, that a TA-RPPT procurement does not permit the contracting officer to differentiate between two companies that have the same adjectival ratings,[19] was not contrary to the terms of the solicitation. As stated above, the solicitation provided that "tradeoffs will [] be made between risk, past performance, and price, with risk and past performance being considered equal to

---

[17](...continued)
*Compare Tr. at 14 with Tr. at 48.* Plaintiff also does not allege that Ms. Moore acted in bad faith or was biased against East/West, but rather that Ms. Moore's advice caused both Ms. Minton and Ms. Arrington to award the contract in a manner contrary to the FAR's independent judgment requirement and the terms of the solicitation. *Tr. at 23-24.*

[18]     *AR at 6-7, 5253-5254.*

[19]     *AR at 3518-19.*

each other and ***significantly more important than*** price."[20]   The solicitation then goes on to provide criteria for risk and past performance.[21]  It does not, however, provide for distinguishing between higher and lower degrees within the same rating, *e.g.* when two bids are given the same "low risk" rating, determining which bid is the lowest risk within the "low risk" rating.  Thus, Ms. Arrington had a reasonable basis for not considering, in her trade-off analysis, which bid had the lowest risk, when both bids had identical "low risk" ratings and identical "very good/significant confidence" ratings.

Next, plaintiff claims that Ms. Arrington's finding that price was the determinative factor between Regent and plaintiff was an abdication of her independent judgment.   Defendant avers that the record demonstrates that Ms. Arrington looked at all the factors detailed in the solicitation and that because all else was equal between Regent and East/West, she rationally awarded the contract to Regent because its bid was lower.

The court agrees with defendant that Ms. Arrington reasonably interpreted the terms of the TA-RPPT solicitation as requiring that price be determinative in this procurement.  While the solicitation indicated that price was indeed deemed as less important than risk or past performance, when the latter two factors are both of equal weight, such as in the case of identical ratings of risk and past performance, it logically follows that price would serve as the tiebreaker.  The reasonableness of the contracting officer's decision is underscored by the fact that Regent's price was [***] less than plaintiff's price, when both bids had identical risk and performance ratings.  Accordingly, the court finds that in no sense did Ms. Arrington fail to exercise her independent judgment or that she awarded the contract to Regent in a manner contrary to the terms of the solicitation when she held that price was outcome-determinative.

Plaintiff also alleges that the Air Force failed to perform the corrective action that served as the basis for the GAO's dismissal of the protest of the September 2005 bid because a new technical team should have been assembled to perform new technical and risk assessment.  This argument, however, is without merit.  The corrective action required the Air Force to re-evaluate "competitive range proposals" by "a new evaluation team."[22]  By definition, the only "competitive range proposals" were those that were technically acceptable, making a new technical assessment unnecessary.  Furthermore, the April 2006 source selection decision indicates that

---

[20]    ***AR at 218.***

[21]    ***AR at 218-221.***

[22]    ***AR at 1075.***

10

"the Air Force decided to conduct a new evaluation of the past performance of the offerors within the competitive range at time of contract award."[23]  The remainder of the source selection decision goes on to provide the results of the re-evaluation. Thus, the record does not support plaintiff's allegation that the Air Force failed to conduct the re-evaluation that it promised to carry out.

Finally, plaintiff's suggestion that Ms. Minton's March 2005 draft source selection decision better exemplifies independent judgment or is otherwise more reasonable than the April 2006 source selection decision is itself irrelevant to the Court's analysis, precisely because it is a draft.  Even if, for the sake of argument, the court was convinced that Ms. Minton's draft decision was more reasonable than the final source selection decision made by the Air Force, "the [c]ourt's only role is to determine whether any rational and reasonable basis supports the agency's decision." *Ellsworth Associates, Inc. v. United States*, 45 Fed. Cl. 388, 393 (1999).  There is simply no basis for the court to reject a final procurement award that satisfies the court's standard of review in the face of an arguably sounder decision.  In fact, the draft source selection decision itself is not reliable because, as Ms. Minton testified at her deposition, she agreed with Ms. Moore that her draft consideration was contrary to the terms of the solicitation, stating that:

> when we went back and looked to see what we were doing, we realized that she was right, and we were trying to put more into the evaluation than we were allowed to.  That we were considering outside factors.  When we realized that, we went back and then evaluated everything straight by the solicitation.  And when we did that, we realized that our decision, our first decision was not supportable.[24]

III.    The Air Force's Past Performance Ratings Of Regent and East/West Were Reasonable

Plaintiff argues that it should have been assigned an "exceptional/high confidence" past performance rating because the majority of customer ratings were exceptional.  Defendant contends that the GAO reasonably rejected this claim and the court must defer to this decision.

---

[23]    *AR at 1139.*

[24]    *AR at 5044.*

11

The GAO found that,

> [u]nder the RFP's evaluation scheme, the highest confidence rating was to be assigned where the agency concluded that there was essentially no doubt as to the offeror's successful performance. Since only one contract was rated very relevant and the protestor received exceptional performance ratings only under two of its three relevant contracts, we think the agency reasonably concluded that East-West's performance record warranted assigning the firm a very good/significant confidence rating based on there being little doubt-rather–than no doubt–as to its successful performance.[25]

The GAO's finding that the Air Force's past performance rating for plaintiff was reasonable is sound.  Plaintiff has not provided any argument that would require the court to come to a different conclusion from that of the GAO.  Accordingly, the court upholds the Air Force's past performance rating of plaintiff.

Plaintiff also avers that Regent should have received a lower risk rating than "very good/significant confidence" because of an alleged pattern of late deliveries as well as other miscellaneous reasons.  Plaintiff cites a document entitled "Summary of Delivery Record on Regent's Past Performance Exemplar Contracts" which lists four separate line items of late deliveries.[26]  Defendant, on the other hand, claims that the Air Force articulated a rational basis for assigning the "very good/significant confidence" rating to Regent because the contracts it submitted were relevant and its customer ratings were all satisfactory or better.  Defendant maintains that there were many reasons to believe that Regent would be able to perform the contract.

Plaintiff's argument is faulty because delivery delays are more properly analyzed as part of past performance than the risk factor, insofar as "proposal risk" is defined as "the risk associated with the offeror's proposed approach,"[27] and as indicated in the delivery record summary.[28]  Regardless, the PCAG Report, dated

---

[25]    *AR at 1217.*

[26]    *AR at 5030.*

[27]    *AR at 219.*

[28]    The only remaining argument plaintiff proffers concerning Regent's risk rating is that Regent proposed a "paper crane," - a modification of two cranes that Regent had previously produced.  Because plaintiff's proposal was also a modification of an existing crane design, however, the offers of both plaintiff and

(continued...)

March 15, 2006, addressed the delivery delay issue.  It stated: "Regent has had some problems with delivery in the past.  This was acknowledged by Regent in their FACTs sheets and corrective action has been taken by Regent to change their processes in order to correct their delinquencies.  No customer indicated that late deliveries were an issue with the contractor's performance."[29]  Since the Air Force had no other derogatory information in its possession other than the late deliveries – an issue that Regent had taken steps to rectify –  it was reasonable for the Air Force to give Regent a "very good/significant confidence rating."  The GAO decision denying plaintiff's protest came to the same conclusion.[30]

Plaintiff's remaining criticisms of Regent's past performance rating are either irrelevant or contradicted by the record, and, therefore, may be disposed of with dispatch.  First, plaintiff argues that the "contracting officer" agrees with alleged faults that it identified.[31]  It is unclear to which contracting officer plaintiff is referring.  Plaintiff, however, has not pointed to any evidence in the record to that effect from Ms. Arrington.  To the extent that plaintiff is referring to Ms. Minton, her views are irrelevant and, in any event, she also gave both East/West and Regent the same "very good/significant" confidence rating.[32]  Second, plaintiff's argument that "none of Regent's prior clients have any significant praise for Regent,"[33] is expressly contradicted by customer comments on the record.[34]  Third, plaintiff's argument that Regent lacks sufficient experience in performing contracts similar to the MACC contract is contradicted by the Air Force's citation of Regent's contract for the delivery of 323 1500-pound floor cranes which it deemed "very relevant" to Regent's past performance.[35]  Fourth, plaintiff's allegation that the Air Force did not receive sufficient feedback about past performance is contradicted by the fact that the Air Force sent out 11 questionnaires about Regent, received 11 responses, and conducted

---

[28](...continued)
Regent cannot be meaningfully distinguished in that respect.  *AR at 1141.*

[29]    *AR at 1124.*

[30]    *AR at 1218.*

[31]    *Pl.'s Second Mot. for Judgment on the Admin. Rec. (Pl.'s Mot.) at 10.*

[32]    *AR at 1041-46.*

[33]    *Pl.'s Mot. at 7.*

[34]    *AR at 1121, 1123-24.*

[35]    *AR at 1122.*

six interviews,[36] far exceeding the four responses received concerning plaintiff.[37] Finally, plaintiff's charge that the Air Force had knowledge of safety problems with Regent's cranes and that Regent failed to disclose latent defects in its crane is not based upon any evidence in the record other than a single allegation from a competitor of Regent which, as the GAO determined, was unrelated to a latent defect in the crane.[38]

<u>Conclusion</u>

For the above-stated reasons, Defendant's Cross-Motion For Judgment Upon The Administrative Record is hereby ALLOWED and Plaintiff's Motion For Judgment On The Administrative Record is DENIED.[39]  Because plaintiff has not succeeded on the merits, its request for injunctive relief is MOOT.  In addition, the court does not have jurisdiction to direct the government to award the contract to plaintiff.  *See ManTech Telecomm. & Info. Sys. v. United States*, 49 Fed. Cl. 57, 79-80 (2001) (citations omitted).  The Clerk is directed to enter judgment in accordance with this opinion.

Any party who seeks the redaction of any proprietary or confidential information from the public version of this opinion shall file under seal its request for redactions by Thursday, December 7, 2006.  A telephonic conference shall be held on Tuesday, December 19, 2006 at 11:00 a.m. concerning further proceedings

---

[36]     *AR at 1121-23.*

[37]     *AR at 1111-14.*

[38]     *AR at 28, 1218-20.*  The record shows that the supposed latent defect was due to **[***]** the misuse of the cranes and was not a Regent manufacturing problem.  *AR at 1218*.  After plaintiff filed its second complaint with the GAO, the Air Force ran an additional search for safety issues with Regent's cranes and reported the results to the GAO for consideration in plaintiff's protest.  The search went beyond the required parameters of the solicitation and the Air Force was unable to find "any recurring safety problems with Regent's cranes."  *AR at 4986*.

[39]     The court received Plaintiff's Motion For Leave To File Corrected Statement Of Facts And Amended Supplemental Statement Of Facts filed November 15, 2006.  Although the court believes this motion is untimely, the court nevertheless reviewed plaintiff's submission and does not believe it affects the above conclusions.

on how the court should proceed on counts V, VI, and VII, the stayed patent infringement claims.[40]

IT IS SO ORDERED.

s/Bohdan A. Futey
**BOHDAN A. FUTEY**
**Judge**

---

[40]     This opinion is being issued redacted.   Defendant submitted redactions in accordance with the court's order of November 20, 2006.